IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONCETTA M. SAWYERS, :

    Plaintiff, :

v. :
                                        Civil Action No. GLR-12-3183

UNITED PARCEL SERVICE, :

    Defendant. :

                              :

**MEMORANDUM OPINION**

Pending before the Court is Defendant United Parcel Service's ("UPS") Motion to Dismiss Plaintiff Concetta M. Sawyers' First Amended Complaint. (ECF No. 15). Sawyers alleges harassment, sex and religious discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012). (ECF No. 11). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011).

For the reasons stated herein, UPS' Motion will be granted. Sawyers' harassment, religious discrimination, and retaliation claims will be dismissed for lack of subject matter jurisdiction. Sawyers' sex discrimination claim will be dismissed for failure to state a claim upon which relief can be granted.

## I. BACKGROUND[1]

UPS operates a worldwide package pick-up and delivery system. In 1996, UPS hired Sawyers, a member of the Pentecostal faith, as a feeder truck driver at its Hagerstown, Maryland facility. During the time in question, Sawyers was the only female among the group of eighteen drivers at the facility. (Def.'s Mot. to Dismiss ["Def.'s Mot."] Ex. 2, at 1, ECF No. 15-3). According to Sawyers, UPS unlawfully harassed and discriminated against her on the basis of sex and religion from Fall 2009 until May 2010.

Sawyers alleges that UPS refused to assign her double loads and overtime pay while her male counterparts received the coveted opportunities. According to Sawyers, this refusal negatively affected her income compared to other male drivers.

Sawyers also alleges that UPS issued differential discipline regarding lunch break extensions based upon sex.[2] Specifically, on November 20, 2009, management accused Sawyers of failing to follow proper methods and procedures by extending her lunch break the previous day. On December 4, 2009,

---

[1] Unless otherwise noted, the following facts are taken from the First Amended Complaint and are viewed in a light most favorable to Sawyers. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[2] This allegation is related to Sawyers' complaint regarding the use of "idle time" identified in her administrative charge. (See Def.'s Mot. Ex. 1, at 1). According to Sawyers, "[m]ale drivers are allowed to unplug their truck computers so they can take longer lunches and accumulate less idle time." (Id.)

2

management accused Sawyers of committing the same infraction and issued a three-day suspension. In response, Sawyers filed a grievance with the union contending that suspensions were not issued for similarly situated male drivers who engaged in the same activity. Sawyers only served one day of the suspension, however, because management allegedly instructed her to return to work.

On May 5, 2010, Sawyers' supervisor, Matthew Chaney, allegedly falsely accused her of failing to blow the horn and notify loaders before backing out her truck. As a result, Chaney allegedly placed Sawyers on notice of termination of employment. On the same day, Chaney allegedly pushed Sawyers in an offensive manner as she prepared to leave for her run to Dulles Airport, while telling her to get into her truck and get down the road. On May 6, 2010, Sawyers filed a civil complaint against Chaney in the District Court of Maryland for Washington County. (See Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Pl.'s Opp'n"] Ex. B, ECF No. 19-3).

On May 12, 2010, UPS informed Sawyers that she would be out-of-service because management stated Sawyers claimed to have seen "invisible things and demons in her truck." (Am. Compl. ¶ 20). Sawyers denied ever making the statement and denied its validity. Notwithstanding her objection, UPS instructed Sawyers to undergo an evaluation by Dr. Allan Levy to gauge the status

3

of her mental health. Dr. Levy conducted the evaluation on May 21, 2010, and determined that Sawyers suffered from a mental illness.

Upon learning of Dr. Levy's findings, Sawyers, disagreeing with his conclusion, contacted Dr. Paul F. Kradel to perform an independent evaluation on June 5, 2010. Dr. Kradel's findings ultimately contradicted Dr. Levy's report. Upon these findings, UPS provided a list of mental health providers Sawyers could contact for a third evaluation. Sawyers selected Dr. Ronald F. Means who issued an October 22, 2010 report concluding that Sawyers did not have a mental illness that would impact her ability to perform her job duties. As a result, Sawyers returned to work on November 1, 2010. During the time of her suspension, however, Sawyers did not receive compensation.

Prior to her appointment with Dr. Levy, Sawyers initiated the administrative complaint process by completing an intake questionnaire with the Maryland Commission on Civil Rights ("MCCR") on May 17, 2010. Sawyers alleges that the intake questionnaire listed sex and retaliation as bases for her complaint, and indicated that the issues included harassment, suspension, and differential treatment.[3] According to Sawyers,

---

[3] The verified copy MCCR has on file, however, only lists sex as the basis of Sawyers' complaint, and indicates that the issues include intimidation, harassment, wages, and suspension.

MCCR employee Barbara Green facilitated the filing process and, in December 2010, allegedly encouraged Sawyers to drop her discrimination charges against UPS. Green also allegedly mailed Sawyers a withdrawal form and contacted her several times seeking its execution. Sawyers alleges that when she met with Green, she explained that her issues involved discriminatory enforcement of company policies, such as the use of idle time, as well as the distribution of overtime work and start times.

Sawyers' final charge of discrimination, however, lists sex as the sole discriminatory basis. (See Def.'s Mot. Ex. 1). Moreover, the charge describes issues related to the idle time, lunch break extensions, overtime, and demons referenced above. (See id.) On March 26, 2012, the MCCR entered a decision adverse to Sawyers. Sawyers timely filed a request for reconsideration, which the MCCR denied on April 16, 2012. The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the MCCR's findings and issued its Dismissal and Notice of Right to Sue on August 1, 2012.

Sawyers commenced the pending action in this Court on October 30, 2012. UPS filed a Motion to Dismiss on January 14, 2013. On February 4, 2013, Sawyers filed the First Amended

---

(Compare Def.'s Mot. Ex. 4, Attach. A, with Attach. B, ECF No. 15-5).

5

Complaint in response.[4] UPS then filed the pending Motion to Dismiss on February 28, 2013.

## II. DISCUSSION

### A. Standard of Review

UPS moves to dismiss Sawyers' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court will address Sawyers' harassment, religious discrimination, and retaliation claims pursuant to Rule 12(b)(1), and the sex discrimination claim pursuant to Rule 12(b)(6).

A motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has

---

[4] Although Federal Rule of Civil Procedure 15(a)(1)(B) permits Sawyers to file an amended complaint in response to a Rule 12(b) motion as a matter of course, Sawyers also filed a Response in Opposition to UPS' Motion to Dismiss the original Complaint on February 7, 2013. (See ECF No. 12). UPS filed a Reply to this Opposition on February 28, 2013. (See ECF No. 16). Although the filing of an amended complaint does not automatically render the pending motion to dismiss moot, see Smith v. Maryland, No. RDB-11-2007, 2012 WL 3596098, at *4 (D.Md. Aug. 20, 2012), UPS filed a second motion to dismiss in response to Sawyers' First Amended Complaint. As a result, UPS' Motion to Dismiss the original Complaint (ECF No. 4) is DENIED as moot.

6

jurisdiction over the case before it. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted); see also Evans, 166 F.3d at 647. The court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768.

Conversely, a motion to dismiss for failure to state a claim is governed by Rule 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (alterations and internal quotation marks omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. U.S., 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition

7

of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alterations and internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

**B. Analysis**

**1. Failure to Exhaust Administrative Remedies**

UPS avers that Sawyers' claims of harassment, religious discrimination, and retaliation should be dismissed for lack of subject matter jurisdiction because they exceed the scope of her administrative charge. The Court agrees.

Before a plaintiff can file a Title VII claim in this Court, she must exhaust her administrative remedies by filing a

charge with the EEOC. <u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 132 (4th Cir. 2002) (citation omitted). The primary purpose of engaging in the administrative process is to notify the employer of the alleged discrimination and provide "a[n] initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions." <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 510 (4th Cir. 2005) (citation omitted). This opportunity aligns itself with the congressional purpose of the exhaustion requirement, which includes encouraging "quicker, less formal, and less expensive resolution of disputes." <u>Id.</u> (citation omitted).

The scope of the federal suit, however, is determined by, and limited to, the contents of the administrative charge. <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009). If the claims in that suit "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." <u>Chacko</u>, 429 F.3d at 509 (citations omitted).

To determine whether a suit exceeds the scope of the administrative charge, the Court considers whether the Complaint contains "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." <u>Jones</u>, 551 F.3d at 300 (citation omitted). The

only document the Court may consider is the actual administrative charge filed with the agency as other documents filed with the EEOC, and not presented to the charged party, fail to satisfy the notice requirements inherent in the administrative process. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 407-08 (4th Cir. 2013). Although administrative charges must be construed liberally, the Court is not "at liberty to read into [them] allegations they do not contain." Id. at 408.

Sawyers' administrative charge identifies sex as the sole discriminatory basis of her claim. (See Def.'s Mot. Ex. 1, at 1). In that charge, Sawyers identifies issues related to the alleged discriminatory issuance of warnings regarding idle time usage, double trailer assignments, and her suspension due to the alleged sighting of invisible things and demons in her truck. (Id.) Sawyers lists the time of discrimination as occurring between June 2009 and May 2010, and the "continuing action" box is checked. (Id.) At best, however, Sawyers' administrative charge alleges discrete acts of sex discrimination. The Court finds no allegations of harassment, religious discrimination, or retaliation contained therein.[5] Therefore, the claims must be dismissed.

---

[5] Sawyers avers that the omission of harassment, religious discrimination, and retaliation, among other things, in the

a. Harassment

The First Amended Complaint generally alleges that UPS harassed Sawyers repeatedly during the time in question. (See, e.g., Am. Compl. ¶¶ 17, 22-23, 26). Sawyers' allegations of harassment, however, are not included in the administrative charge and must, therefore, be dismissed.

Harassment claims occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (citation omitted). Although Sawyers checked the "continuing action" box on her administrative charge, the statement of facts only reference discrete acts of sex discrimination. (See Def.'s Mot. Ex. 1, at 1). These discrete acts involve warnings regarding the use of idle time, double trailer assignments, and Sawyers' May 2010 suspension. (See id.) The administrative charge also lists "intimidation" as an issue, but there are no facts regarding the nature or frequency of the alleged intimidation. Moreover, there is nothing in the administrative charge that

---

administrative charge is due to her complete reliance upon the MCCR to accurately complete the charge based upon her intake questionnaire and discussion with Green. Upon viewing the final charge, however, Sawyers took no action to amend it. Even when an agency completes a charge for an individual, if that person finds an administrative charge to be inaccurate, "they may . . . file an amended charge with the EEOC." Balas, 711 F.3d at 408 (citing 29 C.F.R. § 1601.12(b)).

indicates a reasonable investigation of Sawyer's allegations would materialize into a harassment claim. In fact, the MCCR's findings show that the investigation was related only to discrete acts, not harassment. (See Def.'s Mot. Ex. 2).

Therefore, Sawyers' harassment claim is DISMISSED for lack of subject matter jurisdiction.

### b. Religious Discrimination

Sawyers' religious discrimination claim also exceeds the scope of her administrative charge thereby warranting dismissal.

Sawyers avers that her religious discrimination claim does not exceed the scope of her administrative charge because the charge specifically states that UPS suspended her due to management's claim regarding invisible things and demons in her truck. Similarly, Sawyers avers that she fully explained this statement, including its relation to religious discrimination, in the request for reconsideration she filed with the MCCR.

As a preliminary matter, any document that is not part and parcel of the administrative charge cannot be considered by this Court. See Balas, 711 F.3d at 407-08. Therefore, Sawyers' arguments regarding the intake questionnaire and recitation of factual matter in the request for reconsideration are irrelevant. UPS was not notified of those matters as required by law, and Sawyers submitted the request for reconsideration at the conclusion of the MCCR investigation. Moreover, Sawyers

failed to amend her administrative charge upon finding that it did not contain the discriminatory bases she allegedly requested.

The administrative charge is also void of any reference to religion. Sawyers failed to check the "religion" box and the statement of facts only reference the alleged favorable treatment of male drivers. The allegations in the charge are not likely to lead to the investigation of a religious discrimination claim, which is apparent from the MCCR's failure to investigate such a claim. MCCR's written finding clearly focuses on sex discrimination and even references sex when discussing the alleged invisible things and demons in Sawyers' truck. (See Def.'s Mot. Ex. 2, at 3, ECF No. 15-3) (stating the decision to remove Sawyers from her position after the demon incident was about safety, not her sex).

Accordingly, Sawyers' religious discrimination claim is DISMISSED for lack of subject matter jurisdiction.[6]

    c. <u>Retaliation</u>

Sawyers' retaliation claim suffers from the same deficiencies as her harassment and religious discrimination claims. Namely, the retaliation she references in the First

---

[6] Because the Court dismisses Sawyer's harassment and religious discrimination claims on this ground, it will not address UPS' argument that Sawyers failed to state claims upon which relief can be granted.

Amended Complaint is not reasonably related to her administrative charge.

Sawyers failed to check the "retaliation" box on the administrative charge and the narrative of the document fails to make even the slightest reference to retaliation. (See Def.'s Mot. Ex. 1, at 1). Moreover, there is no reference to any protected activity in the charge, such as a complaint to management about discrimination or the union grievances referenced in the First Amended Complaint. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 491-92 (4th Cir. 2005) (affirming the dismissal of plaintiff's retaliation claim where the narrative of the administrative charge failed to mention retaliatory conduct).

The only statement in the administrative charge remotely related to retaliation are the words "intimidation" and "suspension" listed at the top of Sawyers' statement of facts. (See Def.'s Mot. Ex. 1, at 1). Sawyers fails to provide, however, any context regarding the alleged intimidation or suspension that would prompt an investigation into retaliatory acts. Rather, as written, the suspension is due to management's allegations regarding the invisible things and demons Sawyers allegedly claimed to see in her truck. There are no facts that link the suspension to union grievances or the filing of assault charges. Again, Sawyers' argument that the request for

reconsideration before the MCCR fully explained the retaliation claim is unpersuasive.

As a result, Sawyers' retaliation claim is DISMISSED for lack of subject matter jurisdiction.[7]

**2. Failure to State a Plausible Sex Discrimination Claim**

Sawyers' sex discrimination claim must be dismissed because she fails to allege facts that sufficiently show disparate treatment in relation to similarly situated male employees.

As an initial matter, UPS avers that several of Sawyers' sex discrimination allegations should be dismissed because they concern conduct not included in the administrative charge. (See Def.'s Mot. at 16-17; Am. Compl. ¶¶ 8-11, 21, 30). The pertinent inquiry, however, is "whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same." Syndor v. Fairfax Cnty., Va., 681 F.3d 591, 595 (4th Cir. 2012) (citation omitted). With the exception

---

[7] Sawyers also avers that the length of her suspension constitutes "continuing retaliatory harassment" that was prompted by the filing of her administrative charge. (See Pl.'s Opp'n at 13). According to Sawyers, this constitutes "post-charge retaliation" and is, therefore, not subject to the administrative exhaustion requirement. (Id.) The suspension occurred prior to Sawyers' MCCR filing. Moreover, the length of the suspension was premised upon the pending medical evaluations. The doctor submitted the last report on October 22, 2010. Sawyers returned to work ten days later on November 1, 2010. Sawyers alleges insufficient facts to suggest the ten-day delay was retaliatory. (See, e.g., Am. Compl. ¶ 19) ("Plaintiff was retaliated against due to her protected activity in complaining to the EEOC, her union and UPS management . . . .").

15

of paragraph twenty-one, each of the allegations UPS highlights involve supervisory conduct that is reasonably related to the administrative charge. Moreover, these allegations involve the same time frames, lists members of UPS' management as the primary actors, and involve disparate treatment based upon sex. Id. at 595-96 (noting that plaintiff's administrative and judicial claims are reasonably related when they focus on the same type of discrimination). As a result, the allegations contained in paragraphs eight through eleven, and paragraph thirty of the First Amended Complaint will not be excluded because they are reasonably related to the allegations in the administrative charge. Conversely, the allegations in paragraph twenty-one will be omitted from the Court's consideration because they involve the alleged statements of Sawyers' co-workers, not her supervisors.[8] See Chacko, 429 F.3d at 511 (noting plaintiff's administrative charge alleged only supervisor harassment and failed to mention co-worker harassment). The Court now turns to the sufficiency of Sawyers' allegations.

---

[8] This paragraph reads: "Male feeder drivers have during the period of time subsequent to August 19, 2009, stated to Plaintiff: that women are not supposed to earn the money paid to Plaintiff, that they can find a man to support her and she should file for disability and move to Florida." (Am. Compl. ¶ 21).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). A Title VII plaintiff may pursue their claim through two methods of proof. First, a plaintiff may offer direct or circumstantial evidence of discrimination. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (citation omitted). Second, a plaintiff may utilize the burden-shifting framework adopted in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Although Sawyers correctly notes that a plaintiff need not "plead facts that constitute a prima facie case" under the McDonnell Douglas Corp. framework, she is still required to "allege facts sufficient to state all the elements of her claim." Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F.App'x 351, 353 (4th Cir. 2009) (citations omitted).

Therefore, to withstand a motion to dismiss on her disparate treatment claim without direct evidence, Sawyers must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd on different grounds, 132 S.Ct.

17

1327 (2012) (citation omitted); see also Prince-Garrison, 317 F.App'x at 353.

Sawyers has failed to plead the fourth element of her prima facie case because the allegations lack an underlying factual basis. The First Amended Complaint alleges that UPS failed to issue reprimands for lunch break violations against "similarly situated male drivers"[9] and that "male drivers were assigned double loads, and overtime pay" while UPS denied Sawyers the same. (See Am. Compl. ¶¶ 8, 18). This is Sawyers' only attempt to present comparator evidence.[10] These allegations fail to satisfy the fourth element of the prima facie test, however, because there is no evidence that these male drivers are similarly situated beyond Sawyers' bare, conclusory allegation in paragraph eight.

Moreover, Sawyers' allegations regarding her notice of termination, assault, and suspension (see Am. Compl. ¶¶ 10-16)

---

[9] The grievance form Sawyers attaches to the First Amended Complaint to support this allegation fails to identify sex as the reason for the disparate treatment. Rather, the narrative portion of the form merely states "the Company is harassing me & being unfair by allowing other employees to extend their meal period. Then they discipline me for the same thing." (Am. Compl. Ex. A).

[10] Although comparator evidence is not necessarily required, "a plaintiff who bases her allegations entirely upon a comparison to an employee from a non-protected class must demonstrate that the comparator was 'similarly situated' in all relevant respects." Crawford v. Dep't of Corr. Educ., No. 3:11CV430-HEH, 2011 WL 5975254, at *6 (E.D.Va. Nov. 29, 2011) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981)).

fail to show how gender influenced the alleged actions. Sawyers attempt to remedy this deficiency by inserting the conclusory allegation that "she has been intimidated, harassed, disciplined and suspended from her job due to the fact that she is a female" (Am. Compl. ¶ 17) is insufficient.[11] See Iqbal, 556 U.S. at 678 (citation omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Sawyers' sex discrimination claim is DISMISSED for failure to state a claim upon which relief can be granted.

### III. CONCLUSION

For the aforementioned reasons, UPS' Motion to Dismiss (ECF No. 15) is GRANTED. Count I is DISMISSED for failure to state a claim upon which relief can be granted. Counts II and III are DISMISSED for lack of subject matter jurisdiction. A separate Order follows.

---

[11] Sawyers' allegations regarding her job performance are similarly insufficient to satisfy the second element of a discrimination claim. Sawyers' statements that she was "well qualified to be a feeder driver" and "meeting the same work rules and performance expectations of similarly situated male drivers" (Am. Compl. ¶ 24) are conclusory. In her Opposition, Sawyers avers that UPS informed Dr. Means of her satisfactory work performance during a phone interview. (See Pl.'s Opp'n at 16). This conversation cannot be considered, however, because it is not alleged in the First Amended Complaint or its exhibits. See, e.g., Berlyn, Inc. v. Gazette Newspapers, Inc., 223 F.Supp.2d 718, 732 (D.Md. 2002) (noting "it is well-settled that a plaintiff cannot amend his complaint with a later filed brief.").

Entered this 16th day of May, 2013

                                    _____/s/_____
                                    George L. Russell, III
                                    United States District Judge